IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARTOR KIKI BROWN, : | | |
| Plaintiff, : | | CIVIL ACTION |
| : | | |
| v. : | | No. 16-3887 |
| : | | |
| DR. RONALD PHILLIPS, : | | |
| Defendants. : | | |

**McHUGH, J.**                                                                                               **October 21, 2020**

**MEMORANDUM**

This is a section 1983 action where Gartor Kiki Brown, proceeding *pro se*, alleges that prison officials denied him care for a serious medical need, in violation of his Eighth Amendment rights. Discovery is closed, and the remaining Defendant, Dr. Ronald Phillips, now moves for summary judgment. At issue in this case is whether Brown's testimony alone suffices to establish a genuine dispute of material fact with respect to the seriousness of his medical needs, in the face of substantial evidence to the contrary, including contemporaneous incident and reports and medical records. Although district courts must exercise extreme care in discounting sworn testimony in considering summary judgment, I conclude that this case is one of the rare instances where a reasonable jury could not return a verdict for Plaintiff. I will therefore grant Defendant's motion for summary judgment.

**I.     Relevant Factual and Procedural Background**

Mr. Brown has brought a section 1983 action alleging that employees of the facility where he is incarcerated violated his Eighth Amendment rights. *See* Compl. 3, ECF No. 3. The motions of other Defendants to dismiss or for summary judgment have all been granted, leaving Dr. Ronald Phillips as the sole remaining party. *See* Order Den. Def. Mot. Summ. J., ECF No.

1

37.  The claim before this Court is whether Dr. Phillips provided constitutionally inadequate medical care to Plaintiff on two occasions.  *Id.* at 2.

It is undisputed that Plaintiff was involved in altercations with other inmates on October 19, 2015 and October 21, 2015.  Brown claims that, on October 19, 2015, two inmates struck him in the face with a hard lunch tray, knocked out his tooth, and kicked him.  *See* Compl. 3; Pl. Opp'n to Defs. Mot. Summ. J. 6, ECF No. 33.  Brown further alleges that he suffered a broken jaw and bruised ribs as a result of the attack, *see* Pl. Opp'n 7, but that Dr. Phillips refused to treat Brown after examining him.  *Id.*  According to Plaintiff, when another prison official purportedly commented that Brown looked like he had "a tennis ball in his jaw," Phillips dismissed the observation and reiterated that Brown "was okay."  *Id.*

Brown's sworn testimony is the sole source of support for his version of events.  On October 19, 2015, Sgt. Sean Kroninger completed an incident report following the first altercation between Brown and the two other inmates.  *See* Def. Mot. Summ. J. Ex. B 19, ECF No. 61.  The report details how correctional officers were told that Brown, Saleem Anderson, and Michael Grant were fighting in the cell block.  *Id.*  However, no injuries were recorded.  *Id.*  The observation that Brown did not sustain an injury is further supported by the contemporaneous record of a medical exam conducted by Charles Stork, which observed that Brown had not disclosed any injuries and that there were no injuries present upon examination.  *See* Def. Mot. Summ. J. Ex. C 26, ECF No. 61.  Brown contends that he could not describe his injuries because he could not open his mouth but that it was "apparent that [he] was in anguish."  Pl. Opp'n 7.

On October 21, 2015, a second fight broke out between Brown and Anderson.  Brown alleges that he was knocked unconscious, hit his head on the floor, and cut his face, but that Dr.

Phillips refused to provide him with any treatment. *See* Pl. Opp'n 11. Again, Brown's testimony serves as the sole source of support for his claim. On October 21, 2015, Sgt. Carter completed another incident report that describes the fight that occurred earlier that day. *See* Def. Mot. Summ. J. Ex. B 22. Officers arrived to see Anderson and Brown punching one another. *Id*. Once additional officers responded, Correctional Officer Lynch reported that both Anderson and Brown complied with their demand to deescalate and lay on the ground. *Id.* at 23. After breaking up the fight, Sgt. Carter, Correctional Officer Lynch, and Correctional Officer James Samuel all noted in their respective reports that Brown was uninjured but that Anderson had a laceration on his left eyelid. *Id.* at 22, 23, 24. A medical examination conducted that day by Stephanie Lafiata observed that Brown had suffered a scratch on his nose and his hand. *See* Def. Mot. Summ. J. Ex. C 29. Importantly, the medical records and incident reports from October 21, 2015 are devoid of any reference to the broken jaw or facial swelling that Brown alleges he sustained from the attack only two days before.

Brown disputes the veracity of the incident and injury reports. In his view, the records pertaining to the October 19, 2015 fight fail to reflect the fact that Brown was taken off the block bleeding and was missing a tooth. *See* Pl. Opp'n 17. He claims that the contemporaneous medical records make no reference to these injuries because staff are often overworked and "covering up." *Id.* Brown also claims that the October 21, 2015 fight arose as part of a setup from prison officials. *Id.* at 18. He asks that, "if officials can setup fights, why wouldn't they cover it up by saying Plaintiff had no medical injuries?" *Id.* at 18.

On September 11, 2017, Judge Davis denied Dr. Phillips' motion to dismiss and alternative motion for summary judgment because "Brown's affidavit creates a genuine issue of material fact as to whether Defendant Phillips was deliberately indifferent to Brown's serious

3

medical needs." *See* Order Den. Defs. Mot. Summ. J. 12. Following Judge Davis' ruling, this case was reassigned to this Court. *See* ECF No. 41. Plaintiff sent written discovery requests to Defendant on December 27, 2018. *See* ECF No. 55. Defendants represent that they sent Plaintiff 1300 pages of documents on February 10, 2019 and 300 pages of documents on February 22, 2019. *See* ECF No. 57. *Id.* With discovery closed, Dr. Phillips moved for summary judgment. Def. Mot. Summ. J., ECF No. 61.

## II.     Standard for Review

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as described by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment will be granted when "the movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law*." Wiest v. Tyco Electronics Corp*, 812 F.3d 319, 328 (3d Cir. 2016) (internal citations omitted). A dispute of fact is "genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal citations omitted). The Supreme Court has further clarified that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    Discussion

Plaintiff first contends that he does not have to respond to Defendant's motion for summary judgment, *see* Pl. Resp. Def. Mot. Summ. J., ECF No. 63, as Judge Davis already denied summary judgment at an earlier stage of the litigation. It is true that, "[a]s a matter of comity a successor judge should not lightly overturn decisions of his predecessors in a given case." *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994). However, the law of the

case doctrine does not ordinarily limit the power of a judge to reconsider interlocutory decisions, such as motions to dismiss or motions for summary judgment, even when a case is transferred between judges. *See United States ex rel. Petratos v. Genetech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017); *Kreuger Associates Inc. v. American Dist. Telegraph Co. of Pennsylvania*, 247 F.3d 61, 66 (3d Cir. 2001) ("the district court surely acted within its discretion in reconsidering the [summary judgment] motion post-discovery").[1] Because Judge Davis' order concerned an interlocutory decision and Plaintiff has subsequently received discovery, I will undertake a full review of the merits.

Plaintiff must demonstrate that Dr. Phillips was "deliberately indifferent to medical needs" and "that those needs were serious" in order to prevail on his section 1983 claim. *Pearson v. Prison Health Service*, 850 F.3d 526, 534 (3d Cir. 2017) (internal punctuation and citations omitted). Deliberate indifference includes "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)). A serious medical need is one where a "failure to treat can be expected to lead to substantial and unnecessary suffering, and a doctor has diagnosed the condition, or the need for treatment would be obvious to a lay person." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

As discussed below, there is a lack of any corroborating evidence for Mr. Brown's claim that he had serious medical needs. This case therefore raises the difficult question of whether Mr. Brown's testimony by itself creates a genuine issue of fact. A plaintiff's sworn statement,

---

[1] I am also persuaded by the reasoning of the panel in *Speeney v. Rutgers*, 673 Fed. Appx 149, 153 n.2 (3d Cir. 2016) ("A prior denial of summary judgment should not be viewed as law of the case since [s]uch a denial merely postpones decision of any question; it decides none").

standing alone, can certainly be sufficient to survive a motion for summary judgment. *See Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987); *Weldon v. Kraft*, 896 F.2d 793, 800 (3d Cir. 1990). In rare and narrow circumstances, however, sworn testimony may not suffice to establish a genuine issue of material fact, particularly where the nonmoving party essentially "reassert[s] factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). As the Third Circuit recognized in *Williams,* the Supreme Court's trilogy of cases on summary judgment[2] requires district courts to make "difficult, fact-specific" judgments. *Id.* at 461. *See also Petrucelli v. Bohringer and Ratzinger,* 46 F.3d 1298, 1308 (3d Cir. 1995).

I confronted this same problem in *Nunez v. Heere*, 438 F.Supp. 3d 321 (E.D. Pa. 2020), and after analyzing relevant case law, concluded that in limited instances even sworn testimony or affidavits might not suffice to provide enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986). This is another case where I am also persuaded that Plaintiff's testimony does not create a genuine dispute of fact.

Defendant's contemporaneous incident report states that Brown was uninjured following the October 19, 2015 fight with other inmates. A subsequent medical exam conducted that same day by Charles Stork did not document a broken jaw or any significant injury. Moreover, subsequent medical records from an examination conducted only two days later do not include any reference to swelling or other evidence that would suggest a jaw injury. The lack of record

---

[2] *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Co.,* 475 U.S. 574 (1986).

evidence is notable, as Brown has received over 1,500 pages of documents from Defendant in response to his discovery request. ECF No. 57.[3]

Similarly, Brown alleges that he was knocked unconscious during the altercation on October 21, 2015. In support of this claim, he notes that, in the second incident report, "C/O James does acknowledge the fact that Plaintiff was face down on the ground, not moving." Pl. Opp'n 19. However, the incident report, completed by three officers, clearly implies that the officers observed Brown fighting with the other inmate and that Brown deliberately dropped to the ground in order to comply with the officers' call for de-escalation. *See* Def. Mot. Summ. J. Ex. B 23. Moreover, Sgt. Carter, Correctional Officer Lynch, and Correctional Officer James Samuel all stated in their October 21, 2015 reports that Brown was uninjured. *Id.* at 22, 23, 24. A medical report completed later that day by a different provider, Stephanie Lafiata, documents scratches and makes no reference to Mr. Brown's jaw being broken two days before. *See* Def. Mot. Summ. J. Ex. C 29.

Mr. Brown refers to an inability to eat. During that same time frame, he was repeatedly weighed. He claimed a weight loss and requested a more fulsome diet. But Brown's medical records do not bear out his claim of weight loss, and there is still no reference to a broken jaw.[4] In response, Brown declares that the medical records and incident reports are false and are part of a coverup by prison officials, asserting "if officials can setup fights, why wouldn't they cover it up by saying Plaintiff had no medical injuries?" Pl. Opp'n 18.

---

[3] I requested that Defendants provide the Court, via email, with copies of the medical records that they provided to Plaintiff in discovery. *See* ECF No. 66. Defendants produced records from the period of September 1, 2015 through mid-2016.

[4] According to Plaintiff's medical records, which were submitted to the Court via email, on 9/1/15 Plaintiff weighed 127 pounds. On 10/11/15 he weighed 130 pounds. He asserted a weight loss and requested more food on 11/13/2015, again with no mention of a broken jaw. No weight was entered for that date, but on 12/3/15 he continued to weigh 129 pounds.

7

The penalty of perjury has attached to Plaintiff's sworn testimony and it must be accorded substantial weight. However, at this stage of the litigation, Mr. Brown has received over 1,500 pages of records through discovery, and Plaintiff can only reiterate the allegations from his pleadings, which are entirely contradicted by records completed at the time that fail to document any serious medical needs. *See Williams,* 891 F.2d at 460. For Plaintiff to be correct, at a minimum, six different prison employees[5] would need to have falsified contemporaneous reports concerning the incidents that occurred and the medical exams that followed. I say "at a minimum" because to the extent that Mr. Brown suffered serious injuries one presumes he would have raised them in later visits. One also presumes he would be able to point to unfulfilled requests to be seen by medical providers. Indeed, to the extent that he was seeking a greater caloric intake in mid-November, one presumes that he would have buttressed this request by reference to difficulty eating because of a broken jaw. In short, Plaintiff's version of events is highly improbable, and although there are multiple ways it might have been corroborated by the record, there is no supporting evidence. Given that, a reasonable jury could not conclude that the Plaintiff is the subject of the conspiracy and coverup that he alleges.

In that regard, it bears mention that Plaintiff is a prolific *pro se* litigant, with multiple cases before this Court. In *Brown v. Upper Darby Police Dept.*, No. 16-2255, 2020 WL 733108 (E.D. Pa. Feb. 13, 2020), Mr. Brown alleged that he was brutally beaten while police were trying to secure a DNA sample after arrest, an incident that he alleged was captured on videotape. The incident was indeed recorded but revealed no assault. At summary judgment, Brown then alleged for the first time that a separate beating ostensibly occurred in another room without

---

[5] On October 19, 2015, Sgt. Kroninger and Charles Stork reported that Plaintiff has not been injured in the first altercation with Grant and Anderson. *See* Def. Mot. Summ. J. Ex. B 23; Def. Mot. Summ. J. Ex. C 26. On October 21, 2015, Sgt. Carter, C/O Lynch, C/O Samuel, and Stephanie Lafiata all report that Plaintiff experienced zero or minimal injuries. *See* Def. Mot. Summ. J. Ex. B 22, 23, 24; Def. Mot. Summ. J. Ex. C 29.

recording capability.  I refused to entertain his new and contradictory theory of liability for a variety of reasons, including the Third Circuit's decision in *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 705-06 (3rd Cir.1988), which cautioned district courts not to place weight upon transparent attempts to defeat summary judgment.  The issue here is different, but Mr. Brown's demonstrated willingness "to do whatever it takes" to keep a case alive is a factor in my evaluation of the record and whether there is a factual issue that is "genuine."

The only injuries reasonably supported by the record were minor, would not be "expected to lead to substantial and unnecessary suffering," and the need for treatment would not be obvious to a layperson.  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).  Mr. Brown cannot prove injuries that rise to the level of a "serious medical condition," with the result that his claim under Section 1983 fails as a matter of law.

### IV. Conclusion

Because Plaintiff cannot show that Defendant was deliberately indifferent to his serious medical needs, Defendant's Motion for Summary Judgment will be granted. An appropriate Order follows.

    /s/ Gerald Austin McHugh
United States District Judge